UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:02CR61 (AWT) |
| | : | |
| v. | : | |
| | : | |
| ANGELO BERMUDEZ | : | July 12, 2004 |

## GOVERNMENT'S SENTENCING MEMORANDUM
## RE BLAKELY V. WASHINGTON

The Government submits this sentencing memorandum to address
three principal issues arising from the Supreme Court's decision in
Blakely v. Washington, 2004 WL 1402697 (June 24, 2004).   FIRST,
consistent with principles of *stare decisis* and Blakely's disavowal
of any intent to rule on the validity of the United States
Sentencing Guidelines, the Court should conclude that Blakely does
not affect this Court's authority to determine further sentence-
enhancing facts by a preponderance of the evidence consistent with
the Guidelines.  See Part I, *infra*.

SECOND, if the Court concludes that Blakely applies to the
Guidelines and that Blakely would require on the facts of this case
a further jury determination of sentencing enhancements, the Court
should apply statutory severability analysis to conclude that the
Guidelines should not be applied at all to this case.  Instead, the
Court should revert to pre-Guidelines indeterminate sentencing,
with due consideration of what sentence would otherwise be
prescribed under the Guidelines.  See Part II, *infra*.

THIRD, in addition to stating the sentence it imposes and how
its sentence is affected (if at all) by Blakely, the Court should

state alternative sentences that it would impose in the event that Blakely is interpreted differently by a higher court. This precautionary step may vastly simplify any appellate review and eliminate the necessity for further remand proceedings. The record should make clear what sentence it would impose (1) under the Guidelines without regard to Blakely; (2) under the Guidelines if Blakely applies to sentence-enhancing facts; and (3) under pre-Guidelines indeterminate sentencing principles, with due regard to what the pre-Blakely Guidelines sentence would otherwise be.

## I. **BLAKELY DOES NOT LIMIT THE COURT'S AUTHORITY TO APPLY UPWARD ADJUSTMENTS UNDER THE SENTENCING GUIDELINES**

### A. **This Court Is Bound by Supreme Court and Circuit Court Precedent Upholding the Guidelines.**

In Blakely v. Washington, 2004 WL 1402697 (June 24, 2004), the Supreme Court applied the rule of Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), to invalidate a sentencing enhancement, imposed pursuant to state law, that increased the sentence beyond the range authorized by Washington state's statutory sentencing guidelines regime. The Court explained that, because the facts supporting the enhancement were "neither admitted by [the defendant] nor found by a jury," the sentence violated the Sixth Amendment right to trial by jury. 2004 WL 1402697, at *4.

Blakely did not invalidate the United States Sentencing Guidelines, nor did it hold that its rule applies to the Guidelines. See 2004 WL 142697, at *6 n.9 ("[t]he Federal

2

Guidelines are not before us, and we express no opinion on them");
see also Apprendi, 530 U.S. at 497 n.21 (same).   Indeed, in
Apprendi itself, the Supreme Court expressed no view on the
Guidelines beyond "what this Court has already held."  Id. (citing
Edwards v. United States, 523 U.S. 511, 515 (1998)).

What the Supreme Court has "already held" about the Guidelines
therefore continues to provide the governing principle – and
Supreme Court rulings have consistently upheld the Guidelines
against constitutional attack and underscored their unique status
within our constitutional scheme.  See, e.g., Mistretta v. United
States, 488 U.S. 361 (1989).  Indeed, the Supreme Court has found
that so long as a sentence does not exceed the statutory maximums
established by Congress for the offense of conviction, a Guidelines
sentence can (in fact, sometimes must) be based on judge-found
conduct not proved to a jury, see Edwards v. United States, 523
U.S. 511, 514-15 (1998); conduct not charged in the indictment, see
Witte v. United States, 515 U.S. 389, 399-401 (1995); and conduct
of which a defendant is acquitted but is established at sentencing
by a preponderance of the evidence.  See United States v. Watts,
519 U.S. 148, 156-57 (1997) (per curiam).  Moreover, the Court has
explicitly held that lower courts are bound not only by the
Guidelines, but by their policy statements and commentary as well.
See Stinson v. United States, 508 U.S. 36, 42 (1993).

Furthermore, the Second Circuit has ruled that ordinary upward

3

adjustments and departures under the federal Sentencing Guidelines may be made by the sentencing court based on a preponderance of the evidence, provided that these adjustments do not result in a sentence that exceeds that maximum penalty prescribed by Congress. See United States v. Thorn, 317 F.3d 107, 124 (2d Cir.), cert. denied, 538 U.S. 1064 (2003); United States v. Norris, 281 F.3d 357, 359 (2d Cir.), cert. denied, 536 U.S. 949 (2002).

This court is required to follow these binding precedents. See State Oil Co. v. Khan, 522 U.S. 3, 20 (1997) ("it is [the Supreme Court's] prerogative alone to overrule one of its precedents"); Agostini v. Felton, 521 U.S. 203, 237 (1997) (courts of appeals must leave to "this Court the prerogative of overruling its own decisions," even if such a decision "appears to rest on reasons rejected in some other line of decisions") (quotations and citations omitted). Thus, "'[i]f a precedent of th[e] Supreme Court has direct application in a case ... the Court of Appeals should follow the case which directly controls, leaving to th[e] [Supreme] Court the prerogative of overruling its own decisions.'" United States v. Quinones, 313 F.3d 49, 68 (2d Cir. 2002) (quoting Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484, (1989)). Accordingly, this Court should decline to conclude that the Blakely decision applies to disable a federal sentencing judge from imposing sentence on the basis of sentence-enhancing facts that have been determined by the judge by a preponderance of

4

evidence at sentencing.

## B. The Supreme Court Has Consistently Upheld the Constitutionality of Guidelines Sentences Based on Judge-Found Facts.

The Sentencing Reform Act of 1984 significantly altered the way in which district courts sentence persons convicted of federal crimes. Before the Act, Congress defined broad sentencing ranges, and then left it to individual judges to set sentences within those ranges on a case-by-case basis. See Mistretta, 488 U.S. at 364 (pre-Guidelines, "Congress delegated almost unfettered discretion to the sentencing judge to determine what the sentence should be within the customarily wide range"). With the Act, Congress delegated the authority to channel that judicial discretion to the Sentencing Commission, an "independent commission in the judicial branch of the United States." 28 U.S.C. 991(a); see Mistretta, 488 U.S. at 385. Congress charged the Commission with devising a system of sentencing ranges for categories of offenses and defendants according to various specified and unspecified factors. See 28 U.S.C. 994(a)-(e).[1] In response, the Commission chose to create a system requiring a court to consider a defendant's "real"

---

[1]

See also 28 U.S.C. 991(b)(1)(B) (Commission directed to establish sentencing policies that "provide certainty and fairness in meeting the purposes of sentencing" and that "avoid[] unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct" while maintaining "sufficient flexibility to permit individualized sentences").

offense (i.e., his actual conduct), even if that conduct is not part of the charged offense of conviction. See Guidelines Manual Ch. 1, Pt. A, intro. comment. 4(a) (2002) (now included as an editorial note following Guidelines § 1A1.1). The Commission also specified that such guidelines determinations were to be made within the statutory maximums established by Congress in the United States Code. See Guidelines § 5G1.1; see also Witte, 515 U.S. at 401-02 (noting that Guidelines channel the discretion of sentencing courts to take into account related uncharged misconduct in imposing sentence up to the statutory maximums, in a manner comparable to pre-Guidelines practice).

In Mistretta, 488 U.S. at 412, the Supreme Court upheld the constitutionality of both the federal Guidelines and the Sentencing Commission. In the face of nondelegation and separation of powers challenges, it held that "Congress neither delegated excessive legislative power [to the Commission] nor upset the constitutionally mandated balance of powers among the coordinate Branches" by placing the Commission within the judicial branch. Id. at 384-85, 412; see also id. at 412 (Constitution does not prohibit Congress "from calling upon the accumulated wisdom and experience of the Judicial Branch in creating policy on a matter uniquely within the ken of judges").[2]

---

[2]    The courts of appeals have widely held that the Guidelines also comport with due process. See, e.g., United States v. Govan, 152 F.3d 1088, 1094 (9th Cir. 1998); United

6

With the overall constitutionality of the Guidelines established, the Court was then called upon to evaluate various of the Guidelines' real world applications. Repeatedly, it upheld Guidelines sentences based on judge-found facts neither submitted to nor considered by a jury. Indeed, in Watts, 519 U.S. at 153-54, the Court upheld an enhancement, under Guidelines § 2D1.1(b)(1), for possession of a gun in connection with a drug offense, even though the jury had acquitted the defendant of the firearms charge under 18 U.S.C. 924(c). The Court noted that Guidelines § 1B1.3 -- the "relevant conduct" rule -- "directs sentencing courts to consider all other related conduct, whether or not it resulted in a conviction." 519 U.S. at 153-54; see also U.S.S.G. § 1B1.3, comment., backg'd ("conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range"). Applying that principle, the Court held that the sentencing court could consider the defendant's acquitted conduct (the firearms use) in determining his Guidelines sentencing range (for drug trafficking), so long as the acquitted conduct was proved by a preponderance of the evidence. 519 U.S. at 156-57; see id. at 154 ("sentencing enhancements do not punish a defendant for crimes of

States v. Piper, 35 F.3d 611, 620 (1st Cir. 1994); United States v. Spencer, 25 F.3d 1105, 1112 (D.C. Cir. 1994); United States v. Kerr, 13 F.3d 203, 207 (7th Cir. 1993); United States v. Guajardo, 950 F.2d 203, 206 (5th Cir. 1991); United States v. Delibac, 925 F.2d 610, 614-15 (2d Cir. 1991).

which he was not convicted, but rather increase his sentence because of the manner in which he committed the crime of conviction").

Other cases, too, have upheld Guidelines sentences based on related criminal conduct proved to a judge at sentencing, and not underlying a jury's verdict of guilt. See Witte, 515 U.S. at 399-400 (judge may impose higher Guidelines sentence on defendant convicted of possessing marijuana based on judge's finding that offender also engaged in uncharged cocaine conspiracy); Edwards, 523 U.S. at 514-15 (even if jury convicted defendant of cocaine-only conspiracy, judge may impose higher Guidelines sentence based on finding that defendant's conduct included crack-related activities); United States v. Dunnigan, 507 U.S. 87, 95-96 (1993) (court may impose Guidelines enhancement for perjury at trial when sentencing defendant for offense of conviction).

In so ruling, the Supreme Court clearly viewed the Guidelines enhancements not as "statutory maximums" (requiring proof to a jury beyond a reasonable doubt), but as rules channeling the discretion of judges within the congressionally set maximums in the U.S. Code. Indeed, the Court explicitly said as much in Edwards, which it notably cited with approval in Apprendi:

> Of course, petitioners' statutory and constitutional claims [that the court must base its Guidelines sentence exclusively on the cocaine-only facts found by the jury] would make a difference if it were possible to argue, say, that the sentences imposed exceeded the maximum that the statutes permit for a cocaine-only conspiracy. That is because a

8

maximum sentence set by statute trumps a higher sentence set
forth in the Guidelines.

Edwards, 523 U.S. at 515; Apprendi, 530 U.S. at 497 n.21; see also
Witte, 515 U.S. at 399-400 (although Guidelines enhancement for
uncharged conduct resulted in higher Guidelines range than
otherwise would have applied, range "still falls within the scope
of the legislatively authorized penalty" and is thus
constitutionally permissible); Mistretta, 488 U.S. at 396
(Guidelines "do not . . . establish[] minimum and maximum
penalties" for crimes).

The Supreme Court has thus analyzed the Guidelines as
channeling judicial discretion within congressionally set statutory
maximums, not as creating lower statutory maximums for the offenses
defined by Congress. To upset that understanding now -- and either
invalidate the Guidelines altogether, or hold that each of the
myriad upward adjustments, enhancements, and departures in the
Guidelines must be proved to a jury beyond a reasonable doubt --
would wreak havoc on the federal criminal justice system. In 2002
(the most recent year for which statistics are available), 64,366
federal defendants were sentenced under the Guidelines. See 2002
Source Book of Federal Sentencing Statistics (www.ussc.gov). At
this moment, thousands of cases (at every stage of the proceedings,
from indictment, plea negotiation, trial, sentencing and appeal)
could be unsettled by such a ruling. This Court should not place
the system in such jeopardy and turn back the clock on years of

9

sentencing reform -- especially where, as discussed below, this outcome is not mandated by Blakely.

### C. The Commission-promulgated Federal Guidelines Operate Differently From Washington State's Legislatively Enacted Guidelines.

The Blakely decision involved two Washington state statutes, one broad and one specific, that set forth various maximum penalties for criminal offenses. The first prescribes maximum sentences depending on whether a crime is a Class A felony (life maximum), Class B (ten years), or Class C (five years). See Wash. Rev. Code § 9A.20.021(1). The second statute categorizes individual crimes by "seriousness level" which, along with an offender's criminal history score, yields a "presumptive sentencing range," which is set forth in the state code in the form of a sentencing grid. See Wash. Rev. Code § 9.94A.310(1) (Table 1) (now revised and codified at Wash. Rev. Code § 9.94A.510). The statute authorizes a court to impose a sentence above the presumptive range if it finds "substantial and compelling reasons justifying an exceptional sentence." Blakely, 2004 WL 1402697, at *2. The statute includes an illustrative, non-exhaustive list of possible aggravating factors justifying an exceptional sentence. Id.

Blakely pleaded guilty to second-degree kidnapping involving domestic violence and use of a firearm, a Class B felony. The sentencing court did not sentence him to the presumptive range set by the statutory guidelines (49-53 months) for his crime, but

10

imposed an "exceptional sentence" of 90 months based upon its finding that Blakely had acted with "deliberate cruelty" in committing the offense. See 2004 WL 1402697, at * 3-4. Applying the rule of Apprendi -- that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," 530 U.S. at 490 -- and relying on Apprendi and Ring v. Arizona, 536 U.S. 584 (2002), the Supreme Court held that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 2004 WL 1402697, at * 4. Because "deliberate cruelty" was neither proved to a jury nor admitted by Blakely in his plea, the Court ruled that the enhanced sentence was unconstitutional. Id. at * 4, 6.

As in Apprendi and Ring, the legislative scheme in Blakely created *two* distinct statutory maximums. It broadly classified and provided broad maximum ranges for offenses as A, B, or C felonies, and it also provided crime-by-crime guidelines ranges, from which a judge could depart upward based on his or her own findings of aggravating factors. See 2004 WL 1402697, at * 2.

That is not how the federal system operates. Congress has only created one set of statutory maximums for federal crimes, and those maximums are codified in the United States Code.    The

11

Guidelines operate within those maximums, see Guidelines § 5G1.1, and they set forth a host of factors (the current Manual runs nearly 500 pages) that courts are to consider, both in aggravation and mitigation, to individualize a particular sentence. These factors correspond to those that judges have always taken into account -- such as the manner in which a crime was committed, the nature of the victim, the defendant's role in the offense, whether he obstructed justice at trial, and whether he accepted responsibility for his actions -- in fashioning sentences. See Watts, 519 U.S. at 152.[3]

As discussed above and as the Supreme Court has indicated, the federal Guidelines were never intended to operate on the same footing as the statutory maximums. Indeed, that very assumption sits at the heart of the Guidelines: "they do not bind or regulate the primary conduct of the public or . . . establish[] minimum and maximum penalties for every crime. They do no more than fetter the discretion of sentencing judges to do what they have done for generations -- impose sentences within the broad limits established by Congress." Mistretta, 488 U.S. at 396.

Further, as Mistretta made clear, the Guidelines and the

---

3

Indeed, in formulating the Guidelines, the Commission canvassed prior sentencing practice and attempted to identify and to assign weights to all the factors that judges traditionally used in determining appropriate sentences. See United States Sentencing Commission, Supplementary Report on the Initial Sentencing Guidelines and Policy Statements 16-17 (1987).

12

Sentencing Commission that promulgates them are constitutionally unique.    The Commission is not a legislature.    It is an "independent commission in the judicial branch of the United States." 28 U.S.C. 991(a). In formulating the federal Guidelines, "the Commission enjoys significant discretion."    <u>Mistretta</u>, 488 U.S. at 657.  The Guidelines are not statutes but sentencing rules -- binding on sentencing courts by statute, <u>see</u> <u>Mistretta</u>, 488 U.S. at 367; <u>Stinson</u>, 508 U.S. at 42 (citing 18 U.S.C. § 3553(b)) -- but nevertheless the unique product of a special delegation of authority.

<u>Mistretta</u> recognized that the substance of Congress' delegation to the Commission was essentially nonlegislative in character.    Like Congress' delegation of rulemaking authority to the judicial branch to prescribe rules of procedure and evidence, <u>see, e.g.,</u> 28 U.S.C. 2072, the delegation to the Commission to make sentencing rules "simply leaves with the Judiciary what long has belonged to it."  488 U.S. at 396.  Or, put another way:

> Prior to the [Sentencing Reform] Act, the Judicial Branch, as an aggregate, decided precisely the questions assigned to the Commission: what sentence is appropriate to what criminal conduct under what circumstances.    It was the everyday business of judges . . . to evaluate and weigh the various aims of sentencing and to apply those aims to the individual cases that came before them.  The Sentencing Commission does no more than this, albeit basically through the methodology of sentencing guidelines, rather than entirely individualized sentencing determinations.

488 U.S. at 395; <u>id.</u> at 391 ("Commission's functions . . . are clearly attendant to a central element of the historically

acknowledged mission of the Judicial Branch"); see also United States v. Kinter, 235 F.3d 192, 201 (4th Cir. 2000) ("the Commission's act of establishing sentencing ranges in the Guidelines is categorically different from the legislative act of setting a maximum penalty in a substantive criminal statute").

Blakely, of course, did not rest on the fact that the Washington guidelines scheme was legislatively enacted. Nor, however, did it say that the source of the "statutory maximum" (whether congressional statute or commission guideline) for Apprendi purposes is immaterial. Imposing Apprendi's requirements only when the legislature has made a defendant's exposure to increased punishment contingent on findings of fact that the legislature itself specifies vindicates Apprendi's animating constitutional values. The Sixth Amendment right to trial by jury, and the due process right to insist on rigorous proof to establish guilt of an offense, are fully protected when there must be a jury finding beyond a reasonable doubt on the facts that establish the legislatively prescribed maximum punishment to which a defendant is exposed. Democratically-enacted statutes provide one of the most basic contracts between a citizen and his or her government. Far more than the intricate, extensive, and many-layered determinations in the Guidelines manual, the U.S. Code tells the people of the United States what is and is not expected of them, and warns them of the ultimate consequences should they refuse to follow the

14

rules.  As Justice Scalia said in Apprendi:

> I think it not unfair to tell a prospective felon that if he
> commits his contemplated crime he is exposing himself to a
> jail sentence of 30 years -- and that if, upon conviction, he
> gets anything less than that he may thank the mercy of a
> tenderhearted judge. . . Will there be disparities?    Of
> course.  But the criminal will never get more punishment than
> he bargained for when he did the crime, and his guilt of the
> crime (and hence the length of the sentence to which he is
> exposed) will be determined beyond a reasonable doubt by the
> unanimous vote of 12 of his fellow citizens.

530 U.S. at 498 (Scalia, J., concurring) (emphasis in original);

see also Harris v. United States, 536 U.S. 545, 562 (2002)

("[s]ince sentencing ranges came into use, defendants have not been

able to predict from the face of the indictment precisely what

their sentence will be; the charged facts have simply made them

aware of the 'heaviest punishment' they face if convicted. Judges,

in   turn,   have   always   considered   uncharged   'aggravating

circumstances' that, while increasing the defendant's punishment,

have not swelled the penalty above what the law has provided for

the  acts  charged.")  (plurality  opinion)  (citations,  internal

quotation marks omitted).

In sum, the Supreme Court decisions before Blakely uniformly

upheld the Guidelines system as written: a tightly integrated

system of sentencing rules for judges to apply based on their

findings of fact.  Blakely explicitly declined to express a view on

the federal Sentencing Guidelines, and the federal Sentencing

Guidelines operate in a manner that is distinguishable from the

Washington State guidelines.  Unless and until the Supreme Court

15

decides that Blakely invalidates the federal Sentencing Guidelines, this Court accordingly should continue to adhere to the law as it stands.

II.   **IF THE COURT HOLDS THAT BLAKELY PRECLUDES APPLICATION OF THE GUIDELINES BASED ON JUDGE-MADE FACTUAL FINDINGS IN A GIVEN CASE, THEN THE SENTENCING COURT IN THAT CASE SHOULD IMPOSE SENTENCE WITHIN THE STATUTORY MAXIMUM AND MINIMUM, WITH DUE REGARD TO THE SENTENCES PRESCRIBED BY THE GUIDELINES FOR SIMILAR OFFENSES AND OFFENDERS**

   **A.   Guidelines Enhancements And The Procedures For Applying Them Are Not Severable From The Guidelines As A Whole**

If this Court disagrees with the Government's argument and holds that Blakely applies to the Guidelines, then the Court must decide how sentencing is to be conducted. The Guidelines contain many "enhancement" provisions -- i.e., provisions that provide for a higher offense level or that authorize an upward departure from a defendant's Guidelines sentencing range based on particular factual findings. If Blakely applies to the Guidelines, and absent a waiver by the defendant, those enhancement provisions generally could be applied in a given case only if, contrary to the current system of judge-made findings, the necessary facts have been charged and found by a jury beyond a reasonable doubt.[4]   By

_____

[4]

Of course, the jury finding requirements do not apply to sentence-enhancing facts that stem from or are related to a defendant's prior conviction history. See Blakely, 2004 WL 1402697 at *2 (quoting Apprendi); United States v. Santiago, 268 F.3d 151, 156 (2d Cir. 2001) (noting that "we read Apprendi as leaving to the judge, consistent with due process, the task of finding not only the mere fact of previous convictions but other related issues as well").

16

contrast, provisions that *reduce* a defendant's sentencing range or authorize a downward departure, however, could still be applied, as intended, by a court at sentencing based on findings by a preponderance of the evidence.  See Harris v. United States, 536 U.S. 545 (2002); see also Blakely, 2004 WL 1402697, at * 5 (rule does not apply to cases involving "sentencing scheme[s] that imposed a statutory minimum if a judge found a particular fact"); McMillan v. Pennsylvania, 477 U.S. 79 (1986).

A requirement that enhancing -- but not reducing -- facts have to be submitted to the jury and proven beyond a reasonable doubt would distort the operation of the sentencing system in a wholesale manner that was neither contemplated nor intended by Congress or the Sentencing Commission.  Accordingly, rather than attempting to apply the Guidelines with a "Blakely overlay" of jury factfinding, a court should simply conclude that the parts of the Guidelines system that are unconstitutional (the finding of sentence-enhancing facts by a sentencing judge using a preponderance-of-evidence standard of proof) are inseverable from the Guidelines as a whole. The result is that, in any case in which Blakely precludes judicial factfinding under the Guidelines, statutory severability analysis instructs that the Guidelines as a whole would be invalidated as a binding set of rules governing sentences that must be imposed.

When a court finds some parts of a statutory scheme unconstitutional, the court must inquire into the severability of

17

the remaining provisions. The court of course "should refrain from invalidating more of the statute than necessary." Alaska Airlines, Inc. v. Brock, 480 U.S. 678, 684 (1987). Accordingly, "[w]henever an act of Congress contains unobjectionable provisions separable from those found to be unconstitutional, it is the duty of th[e] court to so declare, and to maintain the act in so far as it is valid." Alaska Airlines, 480 U.S. at 684. But where the remaining provisions are not severable, they too are rendered invalid by the holding of unconstitutionality.

The question whether the unconstitutional provisions are severable turns on an assessment of whether Congress would have enacted the provisions that remain constitutional absent the others. See Minnesota v. Mille Lacs Band of Chippewa Indians, 526 U.S. 172, 191 (1999) ("The inquiry into whether a statute is severable is essentially an inquiry into legislative intent."). As the Supreme Court has stated the rule, "[u]nless it is evident that the Legislature would not have enacted those provisions which are within its power, independent of that which is not, the invalid part may be dropped if what is left is fully operative as law." Buckley v. Valeo, 424 U.S. 1, 108 (1976) (quoting Champlin Refining Co. v. Corporation Comm'n, 286 U.S. 210, 234 (1932)); INS v. Chadha, 462 U.S. 919, 932, 934 (1983) (same; noting that what remains after severance of unconstitutional legislative veto is "'fully operative' and workable administrative machinery" and

18

therefore is severable).

Under those principles, the "relevant inquiry in evaluating severability is whether the statute will function in a manner consistent with the intent of Congress" after the unconstitutional provisions have been severed.   Alaska Airlines, 480 U.S. at 685. If the statute will not function in a manner Congress intended, then the entire statute must be eliminated, and the basic policy choices in designing a new, constitutional scheme left up to Congress.   The court has no authority to "rewrite [the] statute and give it an effect altogether different" from what Congress enacted. Railroad Retirement Bd. v. Alton R. Co., 295 U.S. 330, 362 (1935).

When Congress enacted the Sentencing Reform Act, there is no doubt that the system Congress had in mind was one based on determinations by courts, not juries, of facts necessary for sentencing.   And there is no doubt that the Commission structured the Guidelines for use in such a system.   Eliminating the parts of the Guidelines scheme that would be unconstitutional if Blakely applies to the Guidelines would leave a remainder that is not severable -- i.e., that could not operate in the manner that Congress intended.   For that reason, in any case in which Blakely-type procedures would have to be applied to determining facts necessary for Guidelines enhancements, the Guidelines as a whole would no longer be applicable as binding authority.

a.   Application by judges.   Congress intended the Guidelines

19

to be applied by judges at sentencing, not by juries. That is explicit in Congress's basic command to the Sentencing Commission to promulgate a set of Guidelines. 28 U.S.C. 994(a)(1) ("The Commission . . . shall promulgate and distribute to all courts

. . . guidelines . . . <u>for use of a sentencing court</u> in determining the sentence to be imposed in a criminal case.") (emphasis added). Those Guidelines to the sentencing court shall "take . . . into account," insofar as relevant, "the circumstances under which the offense was committed which mitigate or aggravate the seriousness of the offense" and "the nature and degree of the harm caused by the offense," 28 U.S.C. 994(c)(2) and (3), and the defendant's "role in the offense," 28 U.S.C. 994(d)(9). Congress accordingly specified that the "sentencing court" -- not the jury -- shall make the factual determinations on those factors.

The provisions for appeal similarly establish Congress's intent that courts -- not juries -- should make the factual determinations necessary to apply the Guidelines. Under 18 U.S.C. 3742(d), courts of appeals "shall give due regard to the <u>opportunity of the district court</u> to judge the credibility of the witnesses, and shall accept <u>the findings of fact of the district court</u> unless they are clearly erroneous and . . . shall give due deference to the <u>district court's application of the guidelines to the facts</u>" (emphasis added). Moreover, Congress provided for courts of appeal to determine "whether the sentence . . . was

20

imposed in violation of law" or "was imposed as a result of an incorrect application of the sentencing guidelines," 18 U.S.C. 3742(c); those standards are obviously directed at sentencing courts, and the statute makes no provision for review of jury verdicts. Similarly, Congress provided for equal rights of appeal for the Government and the defendant, 18 U.S.C. 3742(a) and (b), although Government appeals of jury factual findings at a criminal trial are ordinarily impossible under the Double Jeopardy Clause. United States v. Martin Linen Supply Co., 430 U.S. 564 (1977). See also Comprehensive Crime Control Act of 1983, Sen. Rep. No. 98-225, at 65 (projected guidelines "are designed to structure judicial sentencing discretion") (emphasis added); id. at 155 (noting importance of appellate review, which is "crucial to the functioning of the sentencing guidelines").[5]

b. Preponderance of the evidence. Under the Guidelines, sentencing determinations are made by judges by a preponderance of the evidence; the reasonable-doubt standard applicable to jury findings is entirely absent. As the Commission explained, "use of

---

[5]

See also Guidelines § 1B1.2 (provision clearly directed to courts (not juries) to "[d]etermine" facts relevant to application of the Guidelines); Guidelines § 1B1.2 appl. n.2 (Guidelines manual "directs the court, once it has determined the applicable guideline . . . under § 1B1.2(a) to determine any applicable specific offense characteristics (under that guidelines) and any other applicable sentencing factors pursuant to the relevant conduct definition in § 1B1.3.") (emphasis added); Fed. R. Crim. Pro. 32(i) (setting forth procedure for court to resolve issues under the Guidelines at sentencing).

a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case." Guidelines § 6A1.3 comment. See also United States v. Watts, 519 U.S. 148, 155 (1997) (per curiam) (noting "the significance of the different standards of proof that govern at trial and sentencing" under the Guidelines).

c.    Evidence.    Like any sentencing determination, determinations on Guidelines enhancements were intended to be made by the court based on evidence that may not be admissible before a jury under ordinary rules of evidence. See 18 U.S.C. 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); Sentencing Guidelines § 6A1.3 (sentencing court in resolving disputed issues "may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy"); Fed. R. Evid. 1101(d)(3) (Federal Rules of Evidence not applicable in sentencing proceedings); United States v. Duverge Perez, 295 F.3d 249, 254 (2d Cir. 2002) (noting that the "rules of evidence do not apply to sentencing proceedings" and discussing "broad discretion" of

22

district court discretion "as to what types of procedure are needed at a sentencing proceeding for determination of relevant disputed facts") (internal quotations omitted).

A system under which Guidelines enhancements (but not reductions) had to be submitted to a jury for determination beyond a reasonable doubt would contravene the clear intent of Congress and the Sentencing Commission on each of the above points. To be sure, a sentencing system that incorporated jury findings on some factual issues with judicial findings on others could be created. But it is not "within the province of the courts to fashion a remedy," United States v. Jackson, 390 U.S. 570, 579 (1968), that would depart so dramatically from Congress's intent (and that of the Sentencing Commission) in the unified Sentencing Guidelines as promulgated. Although "[s]tatutes should be construed to avoid constitutional questions," this "interpretative canon is not a license for the judiciary to rewrite language enacted by the legislature." United States v. Albertini, 472 U.S. 675, 680 (1985). To do so, "while purporting to be an exercise in judicial restraint, would trench upon the legislative powers vested in Congress by Art. I, § 1 of the Constitution." Id. As one district court has recently concluded, adding a jury overlay to application of Sentencing Guidelines would "effectively require[] the courts to redraft the sentencing statutes and implementing Guidelines." United States v. Croxford, 2004 WL 1462111 at * 10 (D. Utah June

23

29, 2004) (Cassell, J.).

There has never been any determination by Congress, the Sentencing Commission, or any other body that the sentences that resulted from such a patchwork system would be the just and appropriate sentences that satisfied the goals of sentencing as set forth by Congress. Congress set forth a number of goals in the Sentencing Reform Act. It provided that "[t]he purposes of the United States Sentencing Commission are to . . . establish sentencing policies and practices for the Federal criminal justice system that . . . assure the meeting of the purposes of sentencing as set forth in section 3553(a)(2) of title 18, United States Code", to "provide certainty and fairness in meeting the purposes of sentencing [and] avoiding unwarranted sentencing disparities" and to "reflect . . . advancement in knowledge of human behavior as it relates to the criminal justice process." 28 U.S.C. 991(b); see 18 U.S.C. 3553(b).

The Sentencing Commission designed the Guidelines, including the sentencing ranges, to provide for sentences that satisfied those goals when the Guidelines were applied by judges under the existing system. Neither Congress nor the Commission has ever made any determination that the sentences that resulted from applying enhancements (but not reductions) only if they were first proven to a jury beyond a reasonable doubt would be just or appropriate sentences for the crimes at issue. They might be too low (because

24

some enhancements simply could not as a practical matter be proven to a jury, because the beyond-a-reasonable-doubt standard is too high, or for other reasons) or they might be too high (because presumably a reviewing court could not overturn a jury verdict on the applicability of an enhancing fact with the same ease that it could overturn a judge's finding on that fact).  But, either way, there is no reason to believe that applying the Guidelines in this way would result in sentences that the Commission (or Congress) believed were appropriate.    See Guidelines § 1B1.11 ("The Guidelines Manual in effect on a particular date shall be applied in its entirety.").

In addition, among the most important goals of the Sentencing Reform Act was "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. 3553(a)(6). Relatedly, the Guidelines themselves embody a system under which defendants are punished based in large measure on the real facts of the case, not merely the offense that the prosecutor has charged. If the Guidelines are applied with a Blakely overlay requiring submission of enhancing (but not other) facts to the jury, then those features of the system cannot be realized. It would likely be impossible, as a practical matter, to charge and prove to a jury beyond a reasonable doubt all enhancing factors in all cases. The result would be much greater disparity among defendants whose criminal conduct was in

fact quite similar. Moreover, the result would be to change the Guidelines' intended creation of a system of reliance in part on the defendant's "real offense" into a system in which the court is precluded in large part (as to enhancing factors, at least) from relying on the defendant's real offense and would have to rely on the charged offense instead.

In short, the scheme that would result from trying to superimpose the jury system on enhancements (but not reductions) under the Guidelines would put in place a scheme that is so different from what Congress enacted (and the Sentencing Commission thought it was promulgating) that it would in essence be judicial lawmaking, not effectuation of congressional intent. In those circumstances, the proper remedy is to permit Congress to make the policy choices necessary to put into place a constitutional sentencing system and to revert, for the present time, to a pre-Guidelines regime of indeterminate sentencing.

a. Complexity of submitting Guidelines enhancements to the jury. Because the factors that go into a Guidelines sentence were intended to be applied by judges, not juries, they are not well-suited to submission to juries. The result of attempting to submit them to juries could be extraordinary complexity, followed by lengthy and extensive appellate proceedings to determine whether the jury had been correctly instructed.

Typically, juries have to make a few factual determinations on

the limited number of elements of an offense in order to determine
whether a defendant is guilty.  Those elements have usually been
refined through years of judicial decisions, and the instructions
given to juries have become standardized.  The sudden addition of
numerous Guidelines enhancements to the list of facts that juries
must decide could dramatically complicate the task of instructing
juries and obtaining valid verdicts.  As Judge Cassell recently
explained in Croxford, "the list of findings contemplated by the
Guidelines is extensive and nuanced, modified and interpreted
regularly in numerous court opinions, creating a task much better
suited to judges than to juries."  2004 WL 1462111, at * 10.  A
bank robbery case, for example, could require

> a jury to determine factors regarding the nature of the
> offense [under Guidelines § 2B3.1] such as (1) the nature of
> the institution robbed; (2) the presence of, brandishing of,
> or other use of, a firearm; (3) the making of a death threat;
> (4) the presence of ordinary, serious, or permanent or life
> threatening bodily injury; (5) any abduction; (6) any physical
> restraint; (7) the taking of a firearm; (8) the taking of
> drugs; and (9) the value of property taken; and further
> factors [under Chapter 3B of the Guidelines] regarding the
> defendant's role in the offense such as (10) aggravating role;
> (11) mitigating role; (12) abuse of a position of trust; (13)
> use of a special skill; and (14) use of a minor; and further
> factors [under Chapter 3A of the Guidelines] regarding the
> victim such as (15) hate crime motivation; (16) vulnerable
> victim; (17) official victim; (18) terroristic motivation; and
> further factors concerning (19) obstruction of justice [under
> § 3C1.1]; and (20) acceptance of responsibility [under
> § 3E1.1] -- not to mention another dozen or so grounds for
> departing upward or downward from the general guidelines
> calculations.

Croxford, 2004 WL 1462111, at * 17.  The jury would have to be
instructed correctly on each of these factors, and the jury's

27

verdict would presumably be subject to reversal on appeal if the instructions were incorrect.  See also United States v. Medas, No. 03 CR 1048 (E.D.N.Y. July 1, 2004) (Glasser, J.) (discussing practical difficulties posed by 20-page supplemental verdict sheet proposed by the Government in light of Blakely decision).

     b.   Difficult or impossible application of some Guidelines provisions.   Many provisions of great importance under the Guidelines simply could not be effectively implemented if enhancing factors had to be charged in an indictment and submitted to the jury.

     Obstruction of justice.   The obstruction of justice enhancement, under Guidelines § 3C1.1, is frequently applied when a defendant testifies falsely at trial.   Yet at the time of indictment for the offense, the Government will not know whether the defendant will testify falsely or commit other obstructive acts, and it will therefore likely be impossible to indict the defendant on the facts necessary for this enhancement or submit the issue of obstruction to the jury.

     Late-discovered factors.  There are many other enhancing facts in individual cases that the Government learns of only at or near trial or when a presentence report is prepared.  Those facts too would apparently have to be omitted from the sentencing calculation, because they could not be included in the indictment and thus could likely not be submitted to the jury.

28

Guidelines version. Under Guidelines § 1B1.11, "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced." That provision could not be put into effect if the Guidelines provision at issue has changed between the time of jury deliberations and the time of sentencing. The jury would have been instructed on the Guidelines version in effect at that time, not at the time of sentencing.

Relevant conduct. Another very serious problem would arise under the very complex "relevant conduct" rules under Guidelines § 1B1.3. The Guidelines provide that base offense level and offense characteristics should be determined not only on the basis of the offense of conviction, but also on the basis of all of the defendant's "relevant conduct." That includes, inter alia, acts undertaken by others that are "aided, abetted, counseled, commanded, induced, procured or willfully caused by the defendant" and, in the case of conspiracy offenses, "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." Guidelines § 1B1.3(a)(1). Aside from the difficulty of instructing a jury on the dauntingly complex issues arising in applying these definitions, see Guidelines § 1B1.3 comment. (eight-page commentary on relevant conduct rules), requiring jury determinations on relevant conduct could take a criminal trial into areas far afield from the core question that is suitable for jury resolution -- whether the

defendant committed the particular crime with which he was charged.

Upward departures. Upward departures that are not based on specific Guidelines provisions provide another example.  Such departures are permissible based on "an aggravating . . . circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described [in the Guidelines]." 18 U.S.C. 3553(b); see Guidelines § 5K2.0.  It is difficult to see how a jury could be instructed to make a finding about whether such a circumstance existed, and any instruction that could be envisioned would face a very substantial objection that it is too vague to satisfy Due Process standards.

Grouping rules. Under Chapter 3D of the Guidelines, courts are to "group" similar counts and then sentence the defendant according to the offense level applicable to each resulting group -- a process that may result in a higher offense level based on the decision whether or not to group certain counts.  See Guidelines §§ 3D1.3 and 3D1.4.  But the decision whether to group counts depends in part on very complex factual determinations, which were clearly not designed for submission to a jury.  See, e.g., Guidelines § 3D1.2(a) (group when counts "involve the same victim and the same act or transaction"), § 3D1.2((b) (group when counts "involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a

common scheme or plan"); Guidelines § 3D1.2 comment. (explanation of grouping rules). In addition, the decision whether to group counts may increase the total offense level (and thus the total sentence). Thus, it may be that, if Blakely applies to the Guidelines, grouping (or not grouping) could be applied only with appropriate jury instructions and submission of the factual issues to the jury. Those instructions would be extraordinarily difficult for the court to formulate and for the jury to follow.

c. Absurd results. An attempt to apply the Guidelines subject to Blakely would also lead to absurd results in many cases, with sentencing courts bound to impose sentences that are far too short by any reasonable standard. That is not merely because sentencing decisions generally have never been required to be made under the beyond-a-reasonable-doubt standard and because requiring such proof of facts that enhance -- but not those that reduce -- the defendant's sentence would inevitably skew the result. In addition, the court in many cases already tried (or to which the defendant has already pleaded guilty) would be required to impose an absurdly low sentence because of the structure of the Guidelines provisions themselves.

A good example would be the sentences that would result for those convicted of fraud and awaiting sentence. Under the Guidelines, conviction of fraud results in a base offense level of 6 or 7 under Guidelines § 2B1.1(a). That translates into a

31

sentencing range of 0-6 months' imprisonment (slightly higher for those with multiple prior convictions). The enhancements for amount of loss under Section 2B1.1(b)(1), however, can add up to 30 levels to the defendant's offense level, and many other enhancements under Section 2B1.1 may further increase sentence. Most of those enhancements, however, would not ordinarily have been charged in the indictment or found by the jury, and they accordingly would be unavailable at sentencing if the Guidelines were applied with the Blakely overlay requiring a jury verdict on enhancing factors. Accordingly, most defendants who commit fraud -- even multimillion dollar frauds with large numbers of victims and serious consequences for society -- would likely be limited to sentences of little or no jail time if the Guidelines could be applied only with Blakely-type procedures for enhancing factors. See also United States v. Shamblin, 2004 WL 1468561, at *10 (S.D.W.Va. June 30, 2004) (reduction in drug case from 240 months' imprisonment to "almost certainly inadequate" 12-month sentence under Blakely). That absurd result too demonstrates that the Guidelines would not "function in a manner consistent with the intent of Congress" if a court attempted to apply them with the Blakely overlay. See Alaska Airlines, 480 U.S. at 685.

Accordingly, statutory severability principles require for cases in which Blakely would otherwise require jury determination of particular sentence-enhancing facts, that a sentencing court

32

decline altogether to apply the Sentencing Guidelines. Instead, the Court should revert to indeterminate sentencing within the prescribed statutory ranges set forth in the United States Code.

## B. The Guidelines Remain Fully Applicable In Cases In Which Blakely Procedures Are Not Necessary

Assuming Blakely's applicability to the Guidelines, there remain some kinds of cases that would not, under Blakely, require a jury determination of sentence-enhancing facts, and therefore should continue to be subject to judicial factfinding under the Sentencing Guidelines. Three such categories of cases are immediately apparent:

1. Application of Criminal History Enhancements: Both Blakely and Apprendi recognize that the adjudication of prior-conviction enhancements are not subject to jury finding requirements. See Blakely, 2004 WL 1402697 at *2 (quoting Apprendi); United States v. Santiago, 268 F.3d 151, 156 (2d Cir. 2001) (noting that "we read Apprendi as leaving to the judge, consistent with due process, the task of finding not only the mere fact of previous convictions but other related issues as well").

2. Application of Offense Characteristics Not Requiring Further Factual Findings: Some defendants can be sentenced under the Guidelines without consideration of any further sentence-enhancing facts that were not already found or determined by the jury verdict or plea of guilty. For example, some guidelines specify only a single base offense level that may constitute the

33

final adjusted offense level in the absence of any adjustments under Chapters 3 or 4. See Guidelines § 2A1.1; § 2A1.3; 2A4.2. Other cases may simply not involve the application of additional sentence-enhancing facts. For example, a defendant convicted for unlawful possession of a single firearm that was not a "destructive device" and did not have an "obliterated serial number" may well be subject to sentencing only by reference to the base offense level (and criminal history characteristics). See § 2K2.1. In such cases – where Blakely's requirements are not triggered in the course of applying the Guidelines – there is no reason to doubt that Congress would have intended the Guidelines to be applied and enforced as written. Under 18 U.S.C. 3553(b), courts would remain bound in such cases to sentence the defendant in accordance with the Guidelines.

3. Defendant's Waiver or Stipulation to Facts or Guidelines Enhancements: The Guidelines also would remain applicable in any case (usually involving a guilty plea) in which the defendant has stipulated to the facts necessary for application of the Guidelines or has otherwise consented to application of the Sentencing Guidelines for the determination of the sentence in his case. The District of Connecticut's standard plea agreement contains the following provision under which the parties specifically agree to the applicability of the Sentencing Guidelines:

> The defendant understands that the Sentencing Reform Act of 1984 and the Sentencing Guidelines apply in this

34

case.    The defendant understands that the Court is
required to consider any applicable Sentencing Guidelines
but  may  depart  from  those  Guidelines  under  some
circumstances.  The defendant expressly understands that
the Sentencing Guideline determinations will be made by
the Court, based upon input from the defendant, the
Government, and the United States Probation Officer who
prepares the presentence investigation report.    The
defendant further understands that he has no right to
withdraw his guilty plea if his sentence or the Guideline
application is other than anticipated.

As the Court explained in Blakely, "[w]hen a defendant pleads

guilty, the State is free to seek judicial sentence enhancements so

long as the defendant either stipulates to the relevant facts or

consents to judicial factfinding."   2004 WL 1402697, at * 8.

Indeed, "[e]ven a defendant who stands trial may consent to

judicial factfinding as to sentence enhancements."   Ibid.   In

short, because "nothing prevents a defendant from waiving his

Apprendi rights," id., application of the Guidelines in full

continues to be fully constitutional -- and therefore required by

Section 3553(b) -- where the defendant has done so.

## C.   Where Severability Principles Preclude Application of the Guidelines, the Sentencing Court Should Nonetheless Give Due Regard to the Guidelines Sentence

As noted in Part A above, for cases in which the Court

determines in light of statutory severability analysis that the

Guidelines cannot be applied, then the Court should sentence the

defendant between the minimum and maximum sentences prescribed by

statute, and it may find whatever facts it believes necessary to

impose a sentence within that range.   The Court in Blakely noted

35

that indeterminate sentencing schemes, in which the judge "may implicitly rule on those facts he deems important to the exercise of his sentencing discretion," remain fully constitutional. 2004 WL 1402697, at * 7.

In reverting to indeterminate sentencing, the Court should consider how the Guidelines would apply to the case. Under 18 U.S.C. 3553(b),

> [i]n the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall . . . have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the policy statements of the Sentencing Commission.

Congress accordingly recognized that there would be cases in which the Guidelines would not be directly applicable, yet instructed the courts to give "due regard" to how the Guidelines would apply. The constitutionality of that provision is not called into question by Blakely, and there is every reason to believe that Congress would have intended that it remain applicable even in cases in which the Guidelines themselves cannot directly govern the sentence. Accordingly, even in cases in which the Guidelines cannot constitutionally govern the sentence, the sentencing court should consider the sentencing range applicable under the most analogous Guidelines provisions and give that range "due regard" in imposing sentence.

Similarly, the statutes providing for appellate review of sentences would continue to govern, even in cases in which the

36

Guidelines themselves cannot constitutionally govern the sentence. The government, for example, could still appeal on the ground that the sentence "was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable," 18 U.S.C. 3742(b), and the court of appeals should reverse the sentence if it finds that the sentence was so imposed, 18 U.S.C. 3742(f)(2). It is "plainly unreasonable" for a district court to fail to give "due regard" to the Guidelines, as required by Section 3553(b). Accordingly, a court of appeals' determination of whether the sentence should be reversed under Section 3742(f)(2) should place significant weight on whether such regard was given.

Finally, even aside from those statutory commands, "[t]he Sentencing Commission has carefully developed the Guidelines over many years, and the Guidelines generally produce sentences that accord with the public's view of just punishment." Croxford, 2004 WL 1462111, at * 13. Accordingly, the Guidelines provide "useful instruction on the appropriate sentence," id., and sentencing courts should take them into careful consideration in imposing sentence even in cases in which, due to Blakely, the Guidelines could not be applied as binding authority that governs the sentence.

## III. THE COURT SHOULD STATE ALTERNATIVE SENTENCES

It is clear that considerable uncertainty remains how the Supreme Court and Second Circuit will effectuate the Blakely

37

decision. As an initial matter, it remains to be decided whether Blakely even applies to the Guidelines. See *supra* Argument I. If Blakely does apply, it remains to be seen whether under principles of statutory severability analysis the Guidelines should be applied at all in cases where Blakely would otherwise require a jury determination of sentence-enhancing facts. See *supra* Argument II; compare Croxford, *supra* (declining to apply the Guidelines), with Shamblin, *supra* (applying Guidelines but eliminating consideration of Blakely sentence-enhancing factors).

In light of this uncertainty, the Government respectfully recommends that the Court state at sentencing the sentence it would have imposed if it applied different possible methodologies. Specifically, the Court should make clear what sentence it would impose (1) under the Guidelines without regard to Blakely; (2) under the Guidelines if Blakely applies to sentence-enhancing facts; and (3) under pre-Guidelines indeterminate sentencing principles, with due regard to what the pre-Blakely Guidelines sentence would otherwise be. By making clear what sentence would be imposed under alternative methodologies, the Court may

significantly clarify the record in the event of any appellate review.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


H. GORDON HALL
ASSISTANT U.S. ATTORNEY
Fed Bar No. CT05153
157 Church Street
New Haven, CT 06510
(203) 821-3700

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed, postage pre-paid, this 12th day of July, 2004 to:

Jack G. Goldberg, Esq.
225 Broadway, Suite 905
New York, NY 10007

H. Gordon Hall
Assistant U.S. Attorney